# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JC HOSPITALITY LLC D/B/A VIRGIN HOTELS LAS VEGAS,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 501, AFL-CIO,<br><br>Defendant. | Case No. 2:24-cv-00028-RFB-DJA<br><br>**ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff's motion for summary judgment (ECF No. 14), Defendant's motion to strike (ECF No. 18), and Plaintiff's motion to extend time (ECF No. 20). For the following reasons, the Court denies the motion for summary judgment and motion to strike while granting the motion to extend time *nunc pro tunc*.

## II. PROCEDURAL HISTORY

Plaintiff JC Hospitality LLC d/b/a Virgin Hotels Las Vegas ("Virgin Hotels") initiated this action by filing a Complaint on January 4, 2024. ECF No. 1. Pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), Plaintiff petitioned this Court to vacate an arbitrator's award to James DeLorie. 29 U.S.C. § 185(c). Defendant International Union of Operating Engineers Local 501 ("the Union") answered the Complaint on February 2, 2024. ECF No. 7.

The Honorable Daniel J. Albregts, U.S. Magistrate Judge, granted the parties' stipulated discovery plan on March 21, 2024. ECF No. 12. On April 19, 2024, Plaintiff filed the instant motion for summary judgment along with an appendix to the motion. ECF Nos. 14, 15. On May 17, Defendant responded. ECF Nos. 16, 17. Plaintiff replied on June 10, 2024. ECF No. 18. The

next day, Defendant moved the Court to strike Plaintiff's reply as untimely. ECF No. 19. On June 25, 2024, Plaintiff filed the instant motion to extend time, along with a response to Defendant's motion to strike. ECF Nos. 20, 21.

### III. FACTUAL BACKGROUND

The following facts are undisputed.

James DeLorie worked as an engineer for Virgin Hotels from May to November 2022. DeLorie was terminated effective November 15, 2022, for allegedly displaying rude, discourteous, or offensive behavior to co-workers, engaging in abusive language, and failing to demonstrate a positive attitude. The Union filed a grievance on November 17, alleging that DeLorie was discharged without just cause in violation of the Collective Bargaining Agreement ("CBA"). On December 13, 2022, the Union moved the grievance to arbitration. On November 26, 2023, the arbitrator issued his "Analysis and Award," which concluded that DeLorie was not terminated for just cause. The arbitrator awarded DeLorie reinstatement at Virgin Hotels and that he be made whole for any wages and benefits lost in the interim.

The Court's Order follows.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cnty. of

Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## V.   DISCUSSION

Before turning to the merits of Plaintiff's motion for summary judgment, the Court first addresses the parties' motions regarding the timeliness of Plaintiff's reply brief. Lastly, the Court considers Defendant's request for attorneys' fees.

### A.   Motion to Strike and Motion to Extend Time

Defendant argues that Plaintiff's reply brief in support of their summary judgment motion should be stricken for untimeliness. Pursuant to the scheduling order granted on March 21, 2024, Plaintiff's deadline to file the brief was June 6, 2024. Plaintiff filed the brief four days later on June 10. In its response to Defendant's motion to strike, Plaintiff explains the cause of delay as a clerical and scheduling error.

The Court has discretion under Federal Rule of Civil Procedure 6(b) to allow the filing of an untimely answer "where the failure to act was the result of excusable neglect." Fed. R. Civ. P. 6(b). "[W]hile a calendaring mistake caused by the failure to apply a clear local rule may be a weak justification for an attorney's delay, [the Ninth Circuit has] previously found the identical mistake to be excusable neglect." Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1262 (9th Cir. 2010). Accordingly, the Court finds that Plaintiff's delay in filing its reply brief constitutes excusable neglect. The Court therefore denies the motion to strike and will consider the substance of Plaintiff's submission. As a result, Plaintiff's motion to extend time is granted *nunc pro tunc*.

### B.   Judicial Review of Arbitration Award

In this case, the facts are undisputed, and Plaintiff seeks the Court's vacatur of the arbitrator award as a matter of law.

Under 29 U.S.C. § 185(a), federal courts have jurisdiction over actions to vacate or enforce labor arbitration awards. See, e.g., Kemner v. Dist. Council of Painting & Allied Trades No. 36, 768 F.2d 1115, 1118 (9th Cir. 1985). However, courts accord an arbitrator's decision a "nearly unparalleled degree of deference." Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, etc., 886 F.2d 1200, 1204 (9th Cir. 1989) (en banc). "When reviewing the award of arbitrator chosen by the parties to a collective bargaining agreement, we are bound – under all except the

most limited circumstances – to defer to the decision of another even if we believe that the decision finds the facts and states the law erroneously." Id. at 1204. Unless the arbitral decision fails to "draw[] its essence from the collective bargaining agreement," United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960), the district court is bound to enforce the award. See id. at 598-99.

In deciding whether the arbitrator's award draws its essence from the CBA, "the quality – that is the degree of substantive validity – of [his] interpretation is, and always has been, beside the point." Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc., 823 F.3d 524, 532 (9th Cir. 2016), cert. denied, 580 U.S. 1099 (2017). "Instead, the appropriate question for a court to ask when determining whether to enforce a labor arbitration award interpreting a collective bargaining agreement is a simple binary one: Did the arbitrator look to and construe the contract, or did he not?" Id. Accordingly, "the court's inquiry ends" if the arbitrator "made any interpretation or application of the agreement at all." Id. at 531-32.

Here, the parties submitted the following issues to the arbitrator: (1) "was the Grievant terminated for just cause," and, (2) "if not, what is the appropriate remedy?" In rendering his decision, the arbitrator considered relevant provisions of the collective bargaining agreement between Virgin Hotels and the Union, as well as company rules. Most importantly, Section 13.01 of the CBA provides, in relevant part: "Prior to discharge for reasons other than . . . abusive, serious, improper behavior or *discourtesy toward a customer, guest or coworker* . . . the Employer will first give the employee two (2) disciplinary notices of his/her unsatisfactory conduct or performance and allow the employee a reasonable opportunity to correct any deficiency. For the sake of clarity, *engaging in any of the foregoing behaviors shall result in, and be just cause for, immediate discharge*." (emphasis added).

In concluding that DeLorie was not terminated for just cause, the arbitrator found that the CBA provision proscribing discourteous behavior was "too broad and ambiguous to have served as notice under a just cause analysis" because this form of misconduct "encompass[es] a spectrum of behavior potentially ranging from the mild and innocuous to extreme, warranting immediate removal from the workplace followed by termination." Although, according to the arbitrator,

DeLorie in fact "engaged in rude, discourteous, and offensive behavior," his conduct nevertheless "appeared to be on the lower end of the discussed spectra, and no notice was provided that would have put [DeLorie] on reasonable notice that the conduct could lead to summary discharge."

Plaintiff argues that the arbitrator ignored or disregarded the parties' CBA by finding that just cause for immediate termination did not exist despite finding that DeLorie was discourteous to a coworker. Pursuant to Section 13.01 of the CBA, the arbitrator was obligated to find that just cause existed once he found that DeLorie had been discourteous. They argue that, by failing to do so, the arbitrator violated his scope of authority under the CBA, which provides that "[t]he arbitrator . . . shall have no authority, jurisdiction, or power to amend, modify, nullify, or add to the provisions of the [CBA]." Because "an award fails to draw its essence from an agreement only when it ignores the plain language of the contract and manifestly disregards the contours of the agreement[,]" Phoenix Newspapers, Inc. v. Phoenix Mailers Union Loc. 752, Int'l Bhd. of Teamsters, 989 F.2d 1077, 1081 (9th Cir. 1993), Plaintiff asserts that the award to Mr. DeLorie must be vacated.

The Court finds Plaintiff's argument unpersuasive. In New Meiji Mkt. v. United Food & Com. Workers Loc. Union 905, 789 F.2d 1334 (9th Cir. 1986), the Ninth Circuit reversed a district court's vacatur of an arbitral award for reasons apposite to the instant action. In that case, an employee was discharged by her employer "for cash register irregularities." Id. at 1335. The employee grieved and the case was brought to arbitration. Id. The arbitrator found that the employee was not discharged for good cause and awarded reinstation. Id. The employer then filed its petition to vacate in federal court, arguing that the arbitrator did not draw the essence of his award from the CBA, which provided that "such alleged [cash register] irregularities must constitute good cause." Id. The district court vacated the arbitral award.

In summarizing the parties' arguments, the Ninth Circuit found that the employer "is arguing that the [CBA] clause [quoted *supra*] permits it to discharge an employee for a single discrepancy as *de minimis* as a penny." Id. at 1336. The union advanced "a different interpretation" when it "read the clause to mean that, in addition to the mere showing that a cash register discrepancy occurred, proven irregularities still must be serious enough to constitute good cause."

Id. Ultimately, the panel held that the dispute boiled down to a "question of interpretation[.]" Id. Such a question is "for the arbitrator, and since the arbitrator's interpretation draws its essence from the collective bargaining agreement, the arbitrator's interpretation must be accorded considerable deference." Id. Accordingly, the panel held that the district court erred in vacating the award merely "because it interpreted the agreement differently." Id.

Similar to the employer in New Meiji Market, Plaintiff here interprets Section 13.01 of the CBA as proscribing *all* manifestations of discourteous behavior, whether the harm is extreme or *de minimis*. The arbitrator did not agree with Plaintiff's interpretation based on the range of behavior encompassed in the label of "discourteous." "For example," he opined, "giving a fellow employee a 'cold shoulder' and ignoring the coworker's attempt to socialize could be discourteous behavior, but not such that would justify summary discharge." As such, the arbitrator did not "amend, modify, nullify, or add to" Sec. 13.01, but rather interpreted the meaning of discourteous behavior in the context of the CBA. The fact that Plaintiff views its own, strict construction of the CBA as the correct interpretation cannot render the arbitral award invalid. After all, "it is the arbitrator's view of the facts and of the meaning of the contract that [the parties] have agreed to accept." Hawaii Teamsters & Allied Workers Union, Loc. 996 v. United Parcel Serv., 241 F.3d 1177, 1181 (9th Cir. 2001); see also Stead Motors, 886 F.2d at 1205 ("Since the labor arbitrator is designed to function in essence as the parties' surrogate, he cannot 'misinterpret' a collective bargaining agreement . . . his award *is* their contract.").

Courts defer to the arbitrator's decision "as long as the arbitrator even arguably construed or applied the contract." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). As discussed, the arbitrator explicitly interpreted the relevant CBA provision as ambiguous on its face. Thereafter, he constructed the proscription against discourteousness to mean only that sort of behavior extreme enough to warrant summary termination. The Court therefore finds that the arbitrator necessarily drew the essence of his award from the CBA. To find otherwise would be to impermissibly overturn the arbitrator merely "because [Virgin Hotels] interpreted the agreement differently." New Meiji Market, 789 F.2d at 1336; see also Haw. Teamsters, 241 F.3d at 1182 ("[The employer and the union] contracted for the arbitrator's award, for better or for worse; it is

not up to us to reject his interpretation of the CBA simply because one of the parties has a complaint, however valid, that he arrived at that award through faulty interpretation of the CBA.").

The Court therefore defers to the arbitrator's decision and accordingly denies Plaintiff's summary judgment motion.

### C. Attorneys' Fees

The Court may assess attorneys' fees "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 766 (1980). "[A]n unjustified refusal to abide by an arbitrator's award may equate [to] an act taken in bad faith, vexatiously or for oppressive reasons." Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc., 707 F.2d 425, 428 (9th Cir. 1983).

Nothing on the record suggests that Plaintiff has refused to abide by the substance of the arbitral award issued to Mr. DeLorie. "Rather, it sought judicial review of the award, as was its right." Holsum Bakery, Inc. v. Bakery, Confectionery, Tobacco Workers & Grain Millers, Loc. 232, 699 Fed. Appx. 690, 691 (9th Cir. 2017). Because Plaintiff's arguments were not "frivolous," see UFCW, Loc. 197 & 373 v. Alpha Beta Co., 736 F.2d 1371, 1382-83 (9th Cir. 1984), the Court denies the Union's request for attorneys' fees.

### VI. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 14), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike, (ECF No. 19), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Extend Time, (ECF No. 20), is **GRANTED** *nunc pro tunc*.

**DATED:** March 30, 2025.

                                                **RICHARD F. BOULWARE, II**
                                                **UNITED STATES DISTRICT JUDGE**